UNITED STATES of America,
Plaintiff–Appellee,

v.

William H. KENNY, a/k/a Reverend
Kenny, Defendant–Appellant.

No. 92–5083.

United States Court of Appeals,
Fourth Circuit.

Argued July 9, 1992.

Decided Aug. 19, 1992.

Frank Salvato, Alexandria, Va., argued for defendant-appellant.

Rita Genetti Calvin, Sp. Asst. U.S. Atty., Office of the U.S. Atty., Alexandria, Va., argued (Richard Cullen, U.S. Atty. and Mark J. Hulkower, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before NIEMEYER, HAMILTON, and WILLIAMS, Circuit Judges.

## OPINION

HAMILTON, Circuit Judge:

William H. Kenny appeals his conviction for obstruction of justice for attempting to cause and induce a grand jury witness to provide false information. 18 U.S.C. § 1503. Four issues are raised on appeal: (1) whether 18 U.S.C. § 1503 applies to Kenny's alleged conduct, (2) whether there was sufficient evidence to sustain his § 1503 conviction, (3) whether the admission of certain evidence under Fed.R.Evid. 404(b) constitutes reversible error, and (4) whether the district court properly charged the jury on the issue of intent. Finding no reversible error, we affirm the judgment of conviction.

## I

In mid-December 1990, the credentials, service revolver, and two personal American Express Travelers checks of a Federal Bureau of Investigation (FBI) Agent were stolen from the Agent's personal vehicle in Arlington, Virginia. In January 1991, the two checks, endorsed with the name "Kenny," were deposited in the bank account of Rufus and Delores Stancil of Washington, D.C. FBI Agent Alan Malinchak, who was assigned the case, contacted Stancil at his liquor store and inquired as to how he obtained the travelers checks. Stancil furnished information indicating he received the checks from William H. Kenny. Stancil agreed to compare the signature on the stolen checks to signatures which he kept on file at his business. As a result, he also provided Agent Malinchak with fifteen personal checks, written by people from various states, made payable to the Washington National Cathedral. Each bore Kenny's personal endorsement.

Agent Malinchak then contacted Kenny, who admitted that he accepted the travelers checks and claimed that a "Lawrence Williams" had negotiated the checks for items at his thrift store. Kenny claimed that he kept receipts for all sales in his shop, but was unable to produce one for Williams' transactions. At Kenny's prompting, Sheila Wormley, his clerk, confirmed that Williams negotiated the travelers checks and that she accepted them. Kenny described Williams as a very dark-skinned man, about 5'7" to 5'9" in height, weighing 200 pounds, and wearing a mustache. Kenny added that Williams was a crack user and drove a red and white Lincoln or Cadillac with District of Columbia license plates. According to Kenny, Williams was a regular customer who usually appeared on Fridays or Saturdays. Agent Malinchak conducted surveillance of the thrift shop the following Friday, but despite Kenny's assurances, Williams failed to appear. Agent Malinchak then investigated persons with the name "Lawrence Williams" by reviewing driver's license records at the D.C. Department of Motor Vehicles. No person matching the description given by Kenny was found.

On June 24, 1991, Agent Malinchak interviewed Kenny again. Kenny claimed that Williams was in the store two days before, but that he now remembered that it was not Williams who negotiated the travelers checks. Instead, he stated that an individual he knew as "Bernard" negotiated the checks and that Bernard drove a red and white Cadillac or Lincoln with District of Columbia license plates DX36697. Upon investigation, the FBI discovered the license plates were stolen in April 1991. Subsequently, Kenny claimed that he had transposed two of the digits in the license plate number. The new number, however,

was not on file with the D.C. Department of Motor Vehicles.

Kenny then told Agent Malinchak that Sheila Wormley had information, or could supply information, about Bernard. On June 26, Kenny and Agent Malinchak drove around the neighborhood, unsuccessfully searching for Bernard and his vehicle.

Agent Malinchak questioned Kenny as to how he obtained the Washington National Cathedral checks. Kenny explained that he had taken members of his congregation, along with some of their friends and relatives, on a tour of the Cathedral. According to Agent Malinchak, Kenny stated that in appreciation for the tour, these people provided him with various checks for whatever they could afford. Kenny alleged that the checks were made payable to the Washington National Cathedral since they were in payment for his tour service of the Cathedral.

Thereafter, the FBI concluded that Kenny was obstructing its investigation and subpoenaed Kenny and Wormley to appear before a grand jury on August 5, 1991. When Malinchak served Wormley, she informed him that Kenny had given her a piece of paper with Bernard's license plate number on it. She testified at trial that Kenny wanted her to represent to Agent Malinchak that she herself had gotten the license plate number. Following service of the subpoenas, Wormley stated that Kenny repeatedly urged her to give Agent Malinchak the piece of paper and instructed her as to what to say before the grand jury. He allegedly promised to pay Wormley the $175 he owed her if she would tell the grand jury what he wanted her to say.

On August 5, 1991, both Kenny and Wormley appeared before the grand jury. Wormley testified before Kenny and informed the grand jury that Kenny approached her and discussed with her what she should say before the grand jury.

Kenny was subsequently charged in a criminal complaint with obstruction of justice under 18 U.S.C. § 1503 for attempting to cause and induce a grand jury witness to withhold information and to provide false information. Following grand jury testi-mony on that charge, he was indicted under 18 U.S.C. § 1503 (Count I) for obstruction of justice and 18 U.S.C. § 1512 (Count II) for tampering with a witness.

At trial, Wormley testified, over defense counsel's objection, that when she returned home from giving her grand jury testimony, her apartment had been burglarized. The only thing she discerned missing was the piece of paper Kenny had given her with the license number written on it. She conceded, however, that she could not be sure that the slip of paper was stolen, that she did not know where she put it, and effectively that she could have lost it.

During Agent Malinchak's testimony, the district court admitted as evidence of motive under Fed.R.Evid. 404(b), the checks payable to the Washington National Cathedral which Kenny had negotiated. Collen Meehan, business manager of the Washington National Cathedral, testified that some of the makers of the checks were regular contributors to the Cathedral.

Louis Thomas–El, a friend of Kenny's, testified at trial that Kenny told him that he might earn as much as $300 if he testified that the defendant knew nothing about the stolen travelers checks—a subject which Thomas–El acknowledged he knew nothing about.

Following the close of testimony, the district court gave the following charge to the jury on the issue of intent:

> The government need not prove that the defendant's only, or even main purpose was to obstruct the due administration of justice. It is sufficient if the government proves beyond a reasonable doubt the defendant intentionally undertook an act, or endeavored to effect an arrangement the reasonable, foreseeable and natural consequences of which would be to obstruct justice.

(Transcript, Joint Appendix (J.A.) 161).

Subsequently, the jury found Kenny guilty under the first count for obstruction of justice under 18 U.S.C. § 1503, and not guilty under the second count for tampering with a witness under 18 U.S.C. § 1512. This appeal followed.

## II

As noted, four issues are raised on appeal. Each is addressed in turn.

### A

■ Kenny first argues that 18 U.S.C. § 1503 does not criminalize the corrupt persuasion of a grand jury witness, but instead such conduct falls solely under 18 U.S.C. § 1512. Kenny bases his argument on Congress' enactment of the Victim and Witness Protection Act in 1982. Pub.L. No. 97–291 (1982), 96 Stat. 1248 (codified as amended in scattered sections of 26 U.S.C.). By enacting the new statute, Congress removed from 18 U.S.C. § 1503 references to witnesses and enacted a new section, 18 U.S.C. § 1512, which specifically addressed witnesses. As a result of the 1982 Act, and a later amendment, 18 U.S.C. § 1503 reads as follows:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, *or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice*, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

*Id.* (emphasis added). Section 1512 reads:

Tampering with a witness, victim, or an informant

(b) Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

> (1) influence, delay, or prevent the testimony of any person in an official proceeding; ...

or attempts to do so, shall be fined not more than $25,000 or imprisoned not more than one year, or both.

*Id.*

Kenny argues that these changes demonstrate congressional intent to devote 18 U.S.C. § 1503 exclusively to the protection of jurors and court officers and 18 U.S.C. § 1512 to the protection of witnesses. In *United States v. Hernandez*, 730 F.2d 895 (2d. Cir.1984), the Second Circuit adopted this line of reasoning, finding that "Congress intended that intimidation and harassment of witnesses should henceforth be prosecuted under § 1512 and no longer fall under § 1503." *Id.* at 899. Based on this finding, the Second Circuit held that a conviction for witness tampering under 18 U.S.C. § 1503 must be reversed.

■ We do not agree. Perhaps the most fundamental rule of statutory construction is that "the meaning of a statute must, in the first instance, be sought in the language in which the act is framed." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). The omnibus clause of 18 U.S.C. § 1503, emphasized above, clearly encompasses acts "that obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503. The fact that § 1512 more specifically addresses improper conduct involving a witness does not preclude application of § 1503. The existence of a more narrowly tailored statute does not necessarily prevent prosecution under a broader statute, so long as the defendant is not punished under both statutes for the same conduct. *See United States v. Grenagle*, 588 F.2d 87 (4th Cir. 1978), *cert. denied*, 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979); *United States v. Ogden*, 703 F.2d 629 (1st Cir.1983).[1]

---

1. This reasoning has been applied in a similar context construing a prosecution for interstate

This interpretation is consistent with the treatment of 18 U.S.C. § 1503 by other circuits. In particular, the Fifth Circuit noted that:

> In 1982, Congress amended Section 1503 (but not its omnibus clause) and removed the express reference to witnesses, enacting at the same time 18 U.S.C. § 1512 expressly addressing threats or force against or intimidation of witnesses (and certain others). However, we have held that Congress did not thereby intend that urging or advising a witness to testify falsely be exempt from prosecution under the final or omnibus clause of section 1503.

*United States v. Williams,* 874 F.2d 968 (5th Cir.1989). *Accord United States v. Kulczyk,* 931 F.2d 542 (9th Cir.1991); *United States v. Brown,* 948 F.2d 1076 (8th Cir.1991); *United States v. Branch,* 850 F.2d 1080 (5th Cir.1988); *United States v. Marrapese,* 826 F.2d 145 (1st Cir.1987).

Kenny argues that at least some of these cases can be distinguished on the grounds that they did not consider the 1988 amendment of 18 U.S.C. § 1512 to include corrupt persuasion, as a clear indication that 18 U.S.C. § 1512 was the sole statute covering the corruption of witnesses. *See United States v. Masterpol,* 940 F.2d 760 (2d Cir. 1991). This amendment was passed to cover a perceived "hole" in the coverage of 18 U.S.C. § 1512 for acts which did not involve coercive conduct. Congress added the language "or corruptly persuades" to cover noncoercive witness tampering. *See Id.* We reject this distinction; the 1988 amendment does not change the plain language of the omnibus clause of 18 U.S.C. § 1503 and does not, therefore, preclude its general application to acts that obstruct justice. Accordingly, Kenny's obstruction of justice conviction under 18 U.S.C. § 1503 was appropriate.

**B**

Kenny next challenges the sufficiency of the evidence supporting his conviction. In such challenges, we view the evidence in the light most favorable to the prosecution and uphold the verdict if substantial evidence supports it. *United States v. Jones,* 735 F.2d 785, 790 (4th Cir.), *cert. denied,* 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984). Kenny's contention is that the government did not establish that he acted with corrupt intent to influence a potential grand jury witness because Wormley expressly stated that Kenny did not tell her to lie or testify untruthfully, but rather only told her what to say to the grand jury. There was no evidence, he contends, that what he sought to have Wormley say was untrue. We cannot agree with this construction of the testimony. Wormley clearly stated that Kenny attempted to get her to falsely relate that she was with Bernard and obtained his license number. Wormley stated:

> [Kenny] wanted me to give [Agent Malinchak] that number and tell him I was with the guy and that I got this, which I did not.

Wormley testified that she saw Kenny after she had been served the subpoena and that he attempted to instruct her as to what to say.

> [Kenny] said that when I go to court, this is what I should say, and I said No, that's okay. I don't want you to tell me what to say. I want to tell everything to the best of my ability, to the best of my knowledge. He wanted to tell me, instruct me in what to say.

(Transcript J.A. 82). Louis Thomas–El also testified that Kenny approached him concerning his testimony and told him that he could be paid for testifying that Kenny knew nothing of the travelers checks when in fact, Thomas–El admitted he had no knowledge of the travelers checks. In

---

transportation of a stolen aircraft or automobile under 18 U.S.C. § 2314 (prohibiting interstate transportation of stolen goods or merchandise) as opposed to 18 U.S.C. § 2312 (prohibiting interstate transportation of a stolen aircraft or automobile). The Fifth Circuit in *United States v. Parziale,* 947 F.2d 123, 127 (5th Cir.1991) held

that the government was not precluded from proceeding under the broader § 2314 simply because of the existence of a narrower statute. *See also Grenagle,* 588 F.2d at 88 (sanctioning a prosecution for the interstate transportation of a stolen automobile under either § 2314 or § 2312).

light of this testimony, there was substantial evidence to support Kenny's conviction.

## C

 Kenny next challenges the admission of evidence of a break-in at Wormley's residence and the Washington National Cathedral checks. The government offered the evidence of the break-in as admissible evidence under Fed.R.Evid. 404(b). Agent Malinchak testified that Wormley's apartment appeared to have been broken into shortly after she testified before the grand jury. Wormley later stated that nothing was taken except the piece of paper Kenny gave her with the license number written on it.

This evidence was not admissible under Rule 404(b). The government offered no evidence linking Kenny to the break-in. There must be proof such that a reasonable juror could find that the defendant committed the prior act by a preponderance of the evidence. *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). "In the Rule 404(b) context, similar act evidence is only relevant if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id.* at 689, 108 S.Ct. at 1501. The evidence was relevant and properly admissible, however, to explain the absence of the piece of paper at trial. Fed.R.Evid. 402. It was not error, therefore, to allow testimony concerning the break-in.

 Kenny also challenges the admission of the Washington National Cathedral checks, under Rule 404(b), as motive or method of operation for his obstruction of justice. The evidence was not properly admissible as proof of motive because Kenny could neither be indicted nor tried in district court for theft of the Washington National Cathedral checks. In addition, there was no showing in the record that the checks were stolen, that the defendant was not authorized to endorse them or that any of the makers complained about the issuance of the checks or Kenny's endorsement on the reverse side, and thus that Rule 404(b) even applied. As such, it was

an abuse of discretion for the district court to admit this evidence.

 We conclude, however, that the error was harmless. "[A]ny error in admission or exclusion is subject to the harmless error test: 'whether it is probable that the error could have affected the verdict reached by the particular jury in the particular circumstances of the trial.'" *United States v. Morison,* 844 F.2d 1057, 1078 (4th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 247 (1988) (quoting *United States v. Davis,* 657 F.2d 637, 640 (4th Cir.1981)). In light of Wormley and Thomas–El's [2] testimony, we conclude that it is not probable that the admission of the Washington National Cathedral checks affected the verdict reached by the jury given the particular circumstances of this trial. *Morison,* 844 F.2d at 1078.

## D

Kenny finally argues that the district court's charge on intent improperly instructed the jury that they could infer that the defendant intended all of the natural consequences of his knowingly committed acts, and effectively, that the government need not prove intent to obstruct justice. In *United States v. Neiswender,* 590 F.2d 1269 (4th Cir.1979), we examined this issue and stated:

> We see no need to undertake an extended excursion into the subtleties of specific intent. In our view, the defendant need only have had knowledge or notice that success in his fraud would have likely resulted in an obstruction of justice.

*Id.* at 1273. The instruction given by the district court is substantially a reiteration of our consideration of this issue in *Neiswender* and, therefore, was not erroneous.

## III

After a thorough review of the record and the controlling authorities, the court

---

**2.** We find the argument that Thomas–El's testimony was inadmissible to be without merit.

finds no reversible error in the defendant's conviction.

AFFIRMED.