**UNITED STATES of America,**

v.

**Rajul RUHBAYAN, Defendant.**

**No. CR. 202CR29.**

United States District Court, E.D. Virginia, Norfolk Division.

May 1, 2002.

James A. Metcalfe, Assistant United States Attorney, Norfolk, VA, for USA.

J. Barry McCracken, Norfolk, VA, for defendant.

## ORDER

SMITH, District Judge.

This matter is before the court on defendant's Motion to Quash Subpoena filed March 27, 2002, and a nonparty witness' Motion to Quash Subpoena, filed March 29,

2002, by James B. Melton, Esquire. Mr. Melton was served with a subpoena by the government on March 26, 2002. Both defense counsel's and Mr. Melton's motions are premised on the attorney-client privilege recognized in Federal Rule of Evidence 501 and the attorney work-product privilege. The United States filed a Memorandum in Response to Motions to Quash Subpoena on April 9, 2002. Defendant's counsel filed a Supplemental Memorandum of Law in Support of Motion to Quash Subpoena on April 15, 2002. The matter is ripe for review.

Defendant was indicted on February 12, 2002, on five charges relating to perjured testimony allegedly given during his trial in this court August 30 through September 5, 2000, in criminal case number 2:00cr86. He was represented in that case by attorney James B. Melton. Defendant went to trial on five counts: (1) felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1); (2) conspiracy to distribute and to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846; (3) possessing crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); (4) carrying and using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and (5) opening and maintaining a place for manufacturing, distributing, and using crack cocaine, in violation of 21 U.S.C. § 856(a)(1). On September 5, 2000, the jury convicted defendant only of two lesser included offenses, simple possession and conspiracy to possess crack cocaine.

One of the witnesses who testified on defendant's behalf, Yolanda Goodman, claimed under oath during the trial that she possessed the gun found in defendant's van. She also admitted that she was a convicted felon. As a result, she was indicted by the government, and charged with being a felon in possession of a firearm and ammunition in case number 2:01cr23. However, after she was indicted, Ms. Goodman represented that she had never seen the gun found in defendant's van and that he had asked her to represent falsely to Mr. Melton and the jury that the gun was hers. She subsequently pled guilty on May 9, 2001, to a criminal information charging her with obstruction of justice, in violation of 18 U.S.C. § 1503. She agreed with a statement of facts that she "was testifying falsely as requested by the defendant Ruhbayan in order to assist him in misleading the jury in order to obtain an acquittal on Ruhbayan's pending firearms charges." *See* Gov't Mem.Resp. Def.'s Mo. to Dismiss the Indictment, Exhibit 2B.

Defendant Ruhbayan is currently charged in a five-count indictment in this case number 2:02cr29. The five counts are: (1) conspiracy to commit perjury and obstruction of justice, in violation of 18 U.S.C. § 371; (2) corruptly influencing and attempting to influence the testimony of a witness, in violation of 18 U.S.C. § 1512(b)(1); (3) perjury in a court proceeding, in violation of 18 U.S.C. § 1623; (4) suborning of perjury, in violation of 18 U.S.C. § 1622; and (5) obstruction of justice, in violation of 18 U.S.C. § 1503. These charges relate to his own alleged perjury and Ms. Goodman's admitted perjury during the 2000 trial.

The government served a subpoena on Mr. Melton that requested his presence for defendant's currently pending trial and commanded that he bring:

DOCUMENTS: In relation to your representation of Rajul Ruhbayan, in case number 2:00 CR 86: All documents, notes or other records that would show: the dates and times you met with Yolanda Goodman; what you asked her and what she said to you; if you used any information from your client Rajul Ruh-

bayan in asking the questions of Goodman, either pretrial or at trial, what that information was.

Defendant asserts in his motion to quash the subpoena that all communications between defendant and Mr. Melton, whether written or oral, related to the representation of defendant are protected by the attorney-client privilege. Defendant further asserts all documents retained by Mr. Melton that were prepared or compiled as part of Mr. Melton's representation of defendant are protected by the attorney work-product privilege. Mr. Melton recites the same two privilege arguments in his motion to quash. The government asserts that the crime-fraud exception overcomes any attorney-client privilege, and that defendant's revelations to a third-party, namely Ms. Goodman, of the substance of communications with his attorney waives the attorney-client privilege. The government further asserts the work-product privilege was waived and vitiated by a combination of contacts with third parties and by the crime-fraud exception.

■ The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390, 101 S.Ct. 677. The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* at 389, 101 S.Ct. 677.

■ The work-product privilege protects the work an attorney does in anticipation of litigation. *See, e.g., In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 348 (4th Cir.1994). The analysis of when the privilege protects information from being discoverable depends on whether the work sought is "fact work-product" or "opinion work-product." *Id.* In this case, the government is only seeing fact work-product. Fact work-product can be obtained by the government "upon a showing of both substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Id.; see also Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The work-product privilege applies to information sought in criminal trials. *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

■ In the contexts of attorney-client privilege and work-product privilege, the Fourth Circuit has recognized a crime-fraud exception. *In re Grand Jury Proceedings*, 33 F.3d at 347. Although there is a societal interest in enabling clients to get sound legal advice and representation, there is no such interest when the communications with the attorney are intended to further a crime or fraud. Thus, the crime-fraud exception to the attorney-client privilege and the work-product privilege is designed to insure that the privileges do not extend to communications or work-products that further the commission of a fraud or crime. *United States v. Zolin*, 491 U.S. 554, 563, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). In order for the crime-fraud exception to apply, the government must make a *prima facie* showing that the communication it seeks falls within the crime-fraud exception, but it need not offer absolute proof of fraud or crime. *In re Grand Jury Proceedings*, 33 F.3d at 352. The government must show (1) that defendant was engaged in or planning a criminal or

fraudulent scheme and used his counsel to further the scheme, and (2) that the privileged information bears a close relationship to the criminal or fraudulent scheme. *See Chaudhry v. Gallerizzo,* 174 F.3d 394, 403 (4th Cir.1999).

■ The government has met its burden in this case of demonstrating that the crime-fraud exception vitiates any asserted privilege. It has offered sufficient unrebutted *prima facie* evidence that, if believed by the trier of fact, establishes the elements of the crime of obstruction of justice. *See In re Sealed Case,* 162 F.3d 670, 674 (D.C.Cir.1998); *Haines v. Liggett Group Inc.,* 975 F.2d 81, 95–96 (3d Cir. 1992). The government submitted numerous letters from defendant to Ms. Goodman that instruct her first to find someone without a felony conviction to claim the gun, and later to claim the gun herself. (Government's Mem. in Resp. to Def.'s Mo. to Dismiss the Indictment, Exhibits 3–13.)[1] The letters explain how she should approach defendant's attorney and detail the false story she should tell him. *See id.* The letters also direct her to give false testimony at his trial. *See id.*

Based on the evidence in these letters, Ms. Goodman's subsequent guilty plea to a criminal information, and the statement of facts in support of her plea, a prudent person has a reasonable basis to find that a crime or fraud was committed and that the information defendant provided to Mr. Melton directly through his own communi-

cations and indirectly through Ms. Goodman was in furtherance of the crime or fraud.[2] *See In re Grand Jury Proceedings,* 102 F.3d 748, 750–51 (4th Cir.1996) ("The attorney-client and work-product privileges are lost, however, when a client gives information to the attorneys for the purpose of committing or further a crime or fraud."). The government has established a *prima facie* case that defendant tricked his former attorney, Mr. Melton, into providing perjured testimony through Ms. Goodman to the jury. Therefore, the conversations between Mr. Melton and defendant in the course of this conduct are not protected by the attorney-client privilege. Likewise, the work done by Mr. Melton in preparation for Ms. Goodman's testimony at defendant's trial is not protected by the work-product privilege.

### Conclusion

The court concludes the government has established a *prima facie* case, which neither defendant nor Mr. Melton made any effort to rebut, that defendant used Mr. Melton to engage in fraudulent or criminal activity. By doing so, defendant vitiated any attorney-client privilege or work-product privilege which existed. The crime-fraud exception applies, and the motions to quash Mr. Melton's subpoena are DENIED.[3]

The Clerk is DIRECTED to send a copy of this Order to counsel for defendant, the

---

1. Neither defense counsel nor Mr. Melton contested the authenticity of these letters, both having had an opportunity to do so.

2. Although Mr. Melton provided the court with his file from defendant's 2000 trial, the court does not need to conduct an *in camera* review of the file to find that the crime-fraud exception applies. Mr. Melton's file should be returned to him by the Clerk so that he can comply with the government's subpoena.

3. Because the court finds the crime-fraud exception vitiates both asserted privileges, the court need not address the government's argument that defendant waived the attorney-client and work-product privileges by disclosing attorney-client communications to a third party. However, the court notes that this appears to be a viable argument, at least with regard to the attorney-client privilege.

United States Attorney at Norfolk, and James B. Melton, Esquire.

IT IS SO ORDERED