**UNITED STATES of America,**

v.

**Rajul RUHBAYAN, Defendant.**

**No. CRIM.A. 2:02CR29.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 3, 2004.

---

Joseph Barry McCracken, Norfolk, VA, for Rajul Ruhbayan.

James Ashford Metcalfe, U.S. Attorneys, Norfolk, VA, for United States of America.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on defendant's motions for judgment of acquittal and for a new trial. For the reasons set forth below, the court **DENIES** the motions.

### I. Factual and Procedural History

Defendant was indicted on February 12, 2002, for five offenses relating to allegedly perjured testimony given in his trial in this court, August 30 through September 5, 2000, in criminal case number 2:00cr86. The five offenses are (1) conspiracy to commit perjury and obstruction of justice, in violation of 18 U.S.C. § 371; (2) corruptly influencing and attempting to influence the testimony of a witness, in violation of 18 U.S.C. § 1512(b)(1); (3) perjury in a court proceeding, in violation of 18 U.S.C. § 1623; (4) subornation of perjury, in violation of 18 U.S.C. § 1622; and (5) obstruction of justice, in violation of 18 U.S.C. § 1503. Defendant was represented at the instant trial by J. Barry McCracken. Evidence and argument lasted four days. The jury deliberated for several hours on Friday, October 24, 2003, and on Monday, October 27, 2003, before returning guilty verdicts on all counts.

The charges in the instant trial arose out of the activities surrounding defendant's trial in 2000 on five counts of drug and firearm offenses, including being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). Defendant testified at his 2000 trial, admitting that he was a convicted felon, but denying that he was a drug dealer or that he had possessed or used guns. More specifically, defendant denied possessing a pistol which police had found hidden between the cushions in the back of his van.

Defendant also called Yolanda Goodman to testify on his behalf at the 2000 trial. Goodman testified that she was defendant's girlfriend, that she had often been to his home, and that she had never seen him with either drugs or firearms. She also testified that without defendant's knowledge, she had placed the pistol in his van. On September 5, 2000, the jury convicted defendant only of two lesser included offenses, simple possession and conspiracy to possess crack cocaine.

Based on her claims at defendant's 2000 trial, Goodman was indicted by the government, and charged with being a felon in possession of a firearm and ammunition in case number 2:01cr23. After she was indicted, however, Goodman represented that she had nothing to do with the gun, and had testified falsely at defendant's behest to assist his defense. Goodman provided the government with more than fifty letters that defendant had written to her as evidence that defendant had concocted a scheme to offer false testimony in his trial on drug and firearms offenses. She subsequently pled guilty on May 9, 2001, to a criminal information charging her with obstruction of justice, in violation of 18 U.S.C. § 1503.

On February 12, 2002, defendant was indicted in the instant case on the basis of the testimony of Yolanda Goodman and the letters that she produced. Defendant filed a number of pretrial motions, including a motion to dismiss the indictment on the basis of collateral estoppel. On April 10, 2002, the court heard argument on several

of defendant's motions, ruling against defendant. On April 18, 2002, defendant filed a notice of appeal, and on May 20, 2002, this court stayed all further proceedings pending the result of defendant's appeal. On April 7, 2003, the court of appeals affirmed the judgment of this court regarding defendant's claim of collateral estoppel. *United States v. Ruhbayan*, 325 F.3d 197, 205 (4th Cir.), *cert. denied*, 540 U.S. 899, 124 S.Ct. 252, 157 L.Ed.2d 180 (2003). This court then held a hearing on defendant's remaining pretrial motions on June 25, 2003.

At trial, the government introduced the testimony on direct examination of seven witnesses, and the rebuttal testimony of six witnesses. The defendant called one witness and also took the stand in his own defense. The court admitted into evidence more than ninety exhibits, including stipulations.

Without question, the government's most important evidence was the testimony of Yolanda Goodman and the letters written to her by defendant. Goodman testified that defendant had pushed her to find a non-felon to claim possession of the gun found in defendant's van. When she was unable to locate such an individual, Goodman testified, defendant encouraged her to claim the gun herself, and provided instructions on how to approach his lawyer and testify.

Among the statements in defendant's letters [1] were the following:

For me to get out of here is so simple. 1 person who does not have a [Blank] is whats needed. it's that simple....

... [O]nce the right person is found to claim the gun then the law[y]er can really guide us. It's that simple.

(Ex. L–1 at 3.)

We need to find a person for the gun, Think *who* would or could be possibili-

ties, find out who doesn't have felonies. Its that simple....

Those who you think could work *Talk to me First*, before acting out. Okay? Follow my guidance (commands & do not go above them), simply fulfill them. Okay?

(*Id.* at 8.)

... I need a non-felon. I need it now. There are thousands upon thousands of people in Suffolk without felons.

(Ex. L–3 at 2.)

Baby all I really have ag[a]inst me is a gun. Once you claim the gun; then we go to court. On the court date; they will drop the charges against me. & may [or] may not pick them up on you.

(Ex. L–4 at 1.)

Tell my lawyer that you are calling for Rajul Ruhbayan. That you would like to confess to the gun found in my van stuffed between the rear seat back cushions. That the gun is all black & that it did have some bullets in it.

. . . . .

... [W]hen you talk to my lawyer, *don't* tell him any more or less than I've put in this letter. This is a command from your king! Submitt!

(Ex. L–5 at 6–7.)

As for the gun. Since I had no knowledge of it being in the van or you having it you are basically free to say what you want on how you got it.

. . . . .

I want cross you up on the gun & your story.

(Ex. L–9 at 8–9.)

Me doing 5 to 8 years doesn't help. You doing 18 months shows your real.

(Ex. L–12 at 6.)

Defendant filed these motions for judgment of acquittal and for a new trial on

---

1. Defendant agreed that he was the author of the letters in question.

November 4, 2003.[2] The government filed a consolidated response on November 14, 2003. Both motions are now ripe for review.

## II. Analysis

### A. Motion for Judgment of Acquittal

"[T]he court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R.Crim.P. 29(a). A defendant may move for a judgment of acquittal within seven days after a guilty verdict. Fed.R.Crim.P. 29(c).

Defendant's motion raises three arguments: (1) judgment of acquittal should be entered as to all counts of the indictment based on insufficiency of the evidence; (2) judgment of acquittal should be entered as to Count 1 because the judgment of conviction is barred by Wharton's Rule; and (3) judgment of acquittal should be entered as to Count 2 and Count 4 because they duplicate Count 5.

### 1. Sufficiency of the Evidence

■ In reviewing the sufficiency of the evidence supporting a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis omitted). Under this standard, the evidence presented was sufficient for a rational jury to find the essential elements of each offense of conviction. Rather than scrutinize all of the government's evidence, the court will limit its discussion to the testimony of Yolanda Goodman and the letters written by defendant, as they are more than sufficient to address this claim.

■ Defendant argues that Goodman's testimony was not credible because she was an alleged accomplice and cooperating witness for the government, she made statements inconsistent with her testimony at prior proceedings, and she has been convicted of offenses involving dishonesty. The jury was instructed on each of these points, and defendant cross-examined Goodman as to both bias and inconsistent statements. Moreover, "the testimony of a defendant's accomplices, standing alone and uncorroborated, can provide an adequate basis for conviction." *United States v. Burns*, 990 F.2d 1426, 1439 (4th Cir. 1993). A rational jury could credit the testimony of Yolanda Goodman and find it sufficient to support defendant's conviction.

Defendant also argues that the letters submitted to the jury were "ambiguous at best and subject to varied interpretations." (Mem. in Supp. of Mot. for Acquittal at 2.) The jury heard the testimony of defendant and Yolanda Goodman and the argument of counsel on the meaning of the letters. A rational jury could determine that the letters were not ambiguous and find them, combined with the testimony of Yolanda Goodman, sufficient to support defendant's conviction.[3]

**2.** The government comments in footnote 1 of its response that "[i]t appears that defendant's motions were untimely by one day." If this were in fact the case, these motions would be moot. *See Carlisle v. United States*, 517 U.S. 416, 433, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) ("We conclude that the District Court had no authority to grant petitioner's motion for judgment of acquittal filed one day outside the time limit prescribed by Rule 29(c).").

However, in computing a filing deadline for a period of time of fewer than eleven days, intermediate Saturdays and Sundays are excluded. Fed.R.Crim.P. 45(a)(2). Defendant's motions were in fact timely filed by one day.

**3.** It is clear from the jury's verdict that they did not find defendant's testimony to be credible.

## 2. Wharton's Rule

 Wharton's Rule is a judicially-devised doctrine that "an agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." *United States v. Rashwan,* 328 F.3d 160, 164 (4th Cir.2003) (quoting *Iannelli v. United States,* 420 U.S. 770, 774 n. 5, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975) (citation omitted)). Wharton's Rule is aimed at crimes where the "parties to the agreement are the only persons who participate in [the] commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large." *Id.* (quoting *Iannelli,* 420 U.S. at 783, 95 S.Ct. 1284). Thus, the "classic" Wharton's Rule offenses are adultery, incest, bigamy, and dueling. *Iannelli,* 420 U.S. at 782, 95 S.Ct. 1284.

 Defendant claims that his conviction of Count 1, conspiracy to commit perjury and obstruction of justice, is barred by his convictions on the other counts. Defendant argues that, to the extent that the evidence presented at trial established a conspiracy, it was a conspiracy between only defendant and Goodman. Without passing on whether the evidence at trial demonstrated the participation of any other co-conspirators, the court observes that the immediate consequences of perjury and obstruction of justice do not fall primarily on the actors, but on society at large and the criminal justice system. *See Rashwan,* 328 F.3d at 164–65 (denying the application of Wharton's Rule because, among other reasons, the consequences of a scheme to commit immigration fraud "fell not on the actors themselves, but instead on the government that they were

attempting to defraud"). Consequently, Wharton's Rule does not apply to the conviction on Count 1.

## 3. Multiplicity

 Multiplicity is "the charging of a single offense in several counts." *United States v. Burns,* 990 F.2d 1426, 1438 (4th Cir.1993) (quoting 1 Charles A. Wright, *Federal Practice and Procedure* § 142, at 469 (2d ed.1982)). Prior to trial, defendant sought to dismiss Count 2, corruptly influencing the testimony of a witness, in violation of 18 U.S.C. § 1512(b)(1), on the ground that it duplicated Count 5, obstructing justice, in violation of 18 U.S.C. § 1503. The court heard argument and determined that the issue was controlled by *United States v. Kenny,* 973 F.2d 339 (4th Cir.1992), which held that

> [t]he fact that § 1512 more specifically addresses improper conduct involving a witness does not preclude application of § 1503. The existence of a more narrowly tailored statute does not necessarily prevent prosecution under a broader statute, so long as the defendant is not punished under both statutes for the same conduct.

*Id.* at 342.

Ruling from the bench, the court concluded that while *Kenny* did not require the pretrial dismissal of a count of the indictment, "defendant's argument might be compelling at a sentencing stage and could be rebrought at sentencing." (Apr. 10, 2002, Tr. at 35.)[4] As defendant cannot be punished for the same conduct under both § 1512 and § 1503, *Kenny,* 973 F.2d at 342, and a "second conviction, even if it results in no greater sentence, is an impermissible punishment," *Ball v. United States,* 470 U.S. 856, 865, 105 S.Ct. 1668,

4. The government's brief on defendant's pretrial motion also candidly admitted that "if convicted on both, defendant may have a

compelling argument that he may not be sentenced on both." (Mem. in Resp. to Def.'s Mots. at 38.)

84 L.Ed.2d 740 (1985), either Count 2 or Count 5 must be vacated if they are based on the same conduct. Defendant now claims that Count 4, subornation of perjury, in violation of 18 U.S.C. § 1622, is also duplicated by the Count 5 obstruction of justice charge, and moves for judgment of acquittal on Count 4 as well. Defendant does not explain why judgment of acquittal on both Counts 2 and 4 would be a more appropriate remedy than judgment of acquittal only on Count 5. The court finds no reason to so grant judgment of acquittal on Count 4. At sentencing, the court will consider vacating the conviction on Count 5 pursuant to its earlier pretrial rulings and *Kenny*.[5]

### B. Motion for a New Trial

Upon the defendant's motion, the court may vacate any judgment and grant a new trial "if the interest of justice so requires." Fed.R.Crim.P. 33(a). "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty." Fed.R.Crim.P. 33(b)(1).

Defendant addresses seven grounds in support of his motion for a new trial: (1) the admission of evidence which he claims should have been barred by collateral estoppel; (2) the admission of evidence under Federal Rule of Evidence 404(b); (3) the admission of the testimony and records of defendant's counsel from his trial on drug and firearms charges; (4) the admission of evidence of specific instances of defendant's conduct; (5) the alleged loss by government agents of letters corroborating defendant's version of events; (6) evidentiary issues regarding tax returns and a portion of a prior trial transcript; and (7) vindictive prosecution.

### 1. Collateral Estoppel

The doctrine of collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Collateral estoppel bars the admission of evidence in a criminal case when a prior acquittal determined an ultimate issue in the present case. *Dowling v. United States*, 493 U.S. 342, 348, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

Defendant argues that the court improperly admitted evidence regarding issues litigated in his previous trial that are barred by the doctrine of collateral estoppel. The court has already ruled, however, that the ultimate issues in the present case were not determined in defendant's prior trial (Apr. 10, 2002, Tr. at 35), and to the extent that this ruling was appealed, the court of appeals has affirmed.[6] *United States v. Ruhbayan*, 325 F.3d 197, 203 (4th Cir.), *cert. denied*, 540 U.S. 899, 124 S.Ct.

---

**5.** The government has argued that Count 2, corruptly influencing the testimony of a witness, in violation of 18 U.S.C. § 1512(b)(1), and Count 5, obstructing justice, in violation of 18 U.S.C. § 1503, are not multiplicitous because they involve different conduct. The whole of the government's argument is that "a close reading of the indictment shows that each count addressed a separate portion of defendant's actions and required separate elements." (Gov't Resp. at 3.) It appears to the court that the conduct in each count is the same: persuading Yolanda Goodman to give false testimony. However, the government will be given an opportunity at sentencing to argue that the conduct in these counts is different, to which defendant may respond in argument.

**6.** "On appeal, Ruhbayan initially contended that all five counts of the Indictment were barred by collateral estoppel. At oral argument, however, he narrowed the scope of his appeal, challenging only the Perjury Charge and the Subornation Charge." *United States v. Ruhbayan*, 325 F.3d 197, 201 n. 1 (4th Cir.2003).

252, 157 L.Ed.2d 180 (2003). As the ultimate issues in the present trial were not determined by defendant's prior acquittal, collateral estoppel does not apply to prevent the admission of the challenged evidence.

### 2. 404(b) Evidence

Defendant argues that evidence of other crimes was admitted at his trial in violation of Federal Rule of Evidence 404(b), which provides that evidence of prior crimes or bad acts may be admissible for purposes other than "to prove the character of a person in order to show action in conformity therewith." Such purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R.Evid. 404(b). Defendant also argues that even if the evidence admitted fits within Rule 404(b), it should have been excluded under Rule 403, which provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

The court first considered these claims at a hearing on June 25, 2003, at which the court heard argument on and denied defendant's motion to preclude introduction of evidence of other crimes. The court then ruled on similar evidentiary objections at trial. Moreover, the court specifically instructed the jury on the purposes for which it could legitimately consider evidence of other crimes. The court finds no error in the admission of the challenged evidence and stands by its prior rulings on this issue.

### 3. Testimony and Records of James Melton

■ Defendant argues that the testimony of James Melton ("Melton"), defendant's counsel for his prior trial, and records from Attorney Melton's files [7] were admitted in violation of the attorney-client privilege recognized in Federal Rule of Evidence 501 and the attorney work-product privilege.

The court originally addressed this issue before trial on motions by both defendant and Melton to quash the government's subpoena of Melton. After briefing, the court ruled that the crime-fraud exception to the asserted privileges applied. *United States v. Ruhbayan,* 201 F.Supp.2d 682, 686 (E.D.Va.2002). The court concluded that the government had established a prima facie case, which defendant did not rebut, that defendant had used Melton to engage in fraudulent or criminal activity by tricking Melton into providing Yolanda Goodman's perjured testimony to the jury. *Id.* The court concluded that "[b]y doing so, defendant vitiated any attorney-client privilege or work-product privilege which existed" for conversations between Melton and defendant in the course of this conduct, and for the work done by Melton in preparation for Goodman's testimony at trial. *Id.* The evidence presented at trial does not alter the court's conclusion that the crime-fraud exception to the attorney-client and work-product privileges applies, and that the evidence in question was properly admitted.

### 4. Evidence of Specific Instances of Defendant's Conduct

■ Federal Rule of Evidence 608(b) prohibits the use of extrinsic evidence to impeach a witness' credibility. Generally, "[a] cross-examiner may inquire into specific incidents of conduct, but does so at the peril of not being able to rebut the witness' denials." *United States v. Bynum,*

---

7. The records admitted consisted of three redacted letters from Melton to defendant and a computer print-out of a section of the United States Code which had been attached to one letter.

3 F.3d 769, 772 (4th Cir.1993). The purpose of this rule is "to prohibit things from getting too far afield—to prevent the proverbial trial within a trial." *Id.* However, evidence that would be prohibited by Rule 608(b) may still be admitted if it meets the requirements of Rule 404(b). *United States v. Smith Grading & Paving, Inc.,* 760 F.2d 527, 531 (4th Cir.1985). Thus, extrinsic evidence which impeaches a witness' credibility may be admitted if the evidence is also "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b).

Defendant argues that the court erred in permitting the government to call Terrance Goodman, Michael Grey, Dan Miller, and Donte Jordan to rebut defendant's answers to questions about specific instances of drug dealing or firearm use. Although this testimony did reflect on the credibility of the defendant, it also served as proof of defendant's motive to lie in his trial on drug and firearm charges, and as proof that defendant's allegedly false testimony in that trial was not made by mistake or accident. As the challenged testimony was admissible under Rule 404(b), its admission at trial did not violate Rule 608(b). Moreover, the court found at the time, and still finds, that the testimony in question was more probative than prejudicial. Fed.R.Evid. 403.

Defendant claims error on the same basis in the use at trial of one of defendant's income tax returns. For the same reasons, the court finds that the evidence was properly admitted under Rules 404(b) and 403.

### 5. *Loss of Defendant's Letters*

■ At trial, defendant testified that letters from Yolanda Goodman written to him contemporaneously with those offered by the government were lost by government agents while transferring him between jail and the federal penitentiary. Defendant has offered nothing more than his own assertions on this point.[8] Defendant claims that these letters corroborated his version of the events underlying this trial, and argues that this testimony "reflects that the Defendant was denied access to evidence potentially vital to his defense by at least the negligent, if not[ ] intentional[,] acts of government officials." (Mot. for a New Trial at 7.)

However, "when the issue is preservation of potentially exculpatory evidence, the defendant must show bad faith on the part of the government to prevail on a violation of due process claim." *Holdren v. Legursky,* 16 F.3d 57, 60 (4th Cir.1994). The challenged evidence "must ... possess an exculpatory value that was apparent before the evidence was destroyed." *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Even if, as defendant alleged at trial, letters belonging to him were lost in transferring him from jail to the federal penitentiary,[9] there has been no showing that the government agents effecting the transfer would have had any reason to consider the letters of evidentiary value in the defendant's case, or that they acted in bad faith in any way. Defendant's allegation does not provide grounds for a new trial.

### 6. *Tax Returns and Trial Transcript*

■ Defendant claims that the government should not have been permitted to

---

**8.** No inventories, records, or other evidence support that defendant had letters from Goodman when he was being transferred between jails.

**9.** *See supra* note 8.

question him at trial about whether he filed tax returns over a period of years. Defendant's failure to file returns, however, supports the evidence that defendant's income during this period was derived from illegal drug sales, and therefore that defendant committed perjury at his trial on drug and firearms charges.[10] The court found at trial, and still finds, that this evidence is more probative than prejudicial for purposes of Rule 403.

■■■ On the same basis, defendant argues that the admission of a portion of a prior trial transcript reflecting his conviction for a manslaughter involving a firearm was more prejudicial than probative under the standards of Federal Rule of Evidence 609(a). This evidence was highly probative, however, as defendant's theory of defense at trial rested in part on his claim that he did not use guns. The court found then, and still finds, that the probative value of this evidence outweighed any potential prejudice.

### 7. Vindictive Prosecution

■■■ A motion alleging a defect in instituting the prosecution must be raised before trial. Fed.R.Crim.P. 12(b)(3). "To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir.2001). "If the defendant is unable to prove an improper motive with direct evidence, he may still present evidence of circumstances from which an improper vindictive motive may be presumed." *Id.*

■■■ Defendant raised prosecutorial vindictiveness for the first time in this motion, rather than before trial as required by Rule 12(b)(3). Defendant concedes that he cannot demonstrate actual vindictiveness, but argues that the "unique facts of this case" support an inference of vindictiveness. (Mot. for a New Trial at 10.) The record of this case, however, does not bear out defendant's claim.

This prosecution was not commenced because of animus, but because of more than fifty letters produced by Yolanda Goodman evidencing that defendant had committed perjury, corruptly influenced the testimony of a witness, suborned perjury, obstructed justice, and conspired to do the same. The court does not find even an inference of vindictiveness, but even if there were such an inference, it would be conclusively rebutted by the government's possession of substantial evidence that defendant had in fact committed these crimes. Defendant's untimely claim of prosecutorial vindictiveness provides no grounds for a new trial.

### III. Conclusion

For the reasons stated above, the court **DENIES** the defendant's motions for judgment of acquittal and for a new trial in all respects.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to all parties.

**IT IS SO ORDERED.**

---

**10.** Moreover, failure to file tax returns on legitimate income is illegal and is probative of one's honesty.