## UNITED STATES of America,

v.

## Rajul RUHBAYAN, Defendant.

### No. 2:02CR29.

United States District Court,
E.D. Virginia.
Norfolk Division.

Feb. 18, 2004.

James Ashford Metcalfe, Assistant United States Attorney, Norfolk, VA, Counsel for USA.

Joseph Barry McCracken, Esquire, Norfolk, VA, Counsel for Defendant.

### *OPINION*

REBECCA BEACH SMITH, District Judge.

This matter came before the court on February 4, 2004, for the sentencing of defendant Rajul Ruhbayan. At a jury trial conducted between October 20, 2003, and October 27, 2003, defendant was found guilty on all five counts of the pending indictment: (1) conspiracy to commit per-

jury and obstruction of justice, in violation of 18 U.S.C. § 371; (2) corruptly influencing and attempting to influence the testimony of a witness, in violation of 18 U.S.C. § 1512(b)(1); (3) perjury in a court proceeding, in violation of 18 U.S.C. § 1623; (4) subornation of perjury, in violation of 18 U.S.C. § 1622; and (5) obstruction of justice, in violation of 18 U.S.C. § 1503.[1]

A presentence report ("PSR") was prepared by the probation officer on December 23, 2003, and supplemented on January 27, 2004. Both the government and defendant objected to paragraph 44 of the PSR, which stated that

> [t]he defendant is an organizer and leader in the offense. The defendant recruited and directed the activities of the participants in this offense. The defendant provided detailed instructions to carry out the plan and coordinated the efforts of the participants. As a result, the defendant's offense level is being enhanced by two levels pursuant to Section 3B1.1(c).

The government argued that defendant should be assessed a four-level enhancement pursuant to § 3B1.1(a) rather than a two-level enhancement pursuant to § 3B1.1(c). Conversely, the defendant argued that no enhancement was appropriate. At sentencing, the court ruled from the bench, sustaining the government's objection and overruling the defendant's objection.[2]

## I. Factual Background

The instant offenses of conviction arose out of the activities surrounding defendant's trial in 2000 on five counts of drug and firearm offenses, including being a felon in possession of a firearm and ammu-

nition, in violation of 18 U.S.C. § 922(g)(1). Defendant testified at his 2000 trial, admitting that he was a convicted felon, but denying that he was a drug dealer or that he had possessed or used guns. More specifically, defendant denied possessing a loaded pistol which police had found hidden between the cushions in the back of his van.

Defendant called Yolanda Goodman ("Goodman") to testify on his behalf at the 2000 trial. Goodman testified that she was defendant's girlfriend, that she had often been to his home, and that she had never seen him with either drugs or firearms. She further testified that without defendant's knowledge, she had placed the loaded pistol in his van. On September 5, 2000, a jury convicted defendant only of two lesser included offenses, simple possession and conspiracy to possess crack cocaine, acquitting him of all other charges.

Based on her claims at defendant's 2000 trial, Goodman was indicted by the government, and charged with being a felon in possession of a firearm and ammunition. After she was indicted, however, Goodman recanted her earlier testimony about the gun, representing that she had testified falsely at defendant's behest. Goodman provided the government with more than fifty letters which defendant had written to her as evidence that defendant had concocted a scheme to offer false testimony in his 2000 trial. The letters, which were admitted at the instant trial and considered by the jury, contained passages instructing Goodman on how to approach defendant's counsel, James Melton ("Melton"), in order to convince him to present Goodman's testimony at the 2000 trial.

---

1. The court subsequently vacated for purposes of sentencing the conviction on Count 5 due to multiplicity with Count 2. *See United States v. Kenny*, 973 F.2d 339, 342 (4th Cir. 1992) (holding that a defendant may be tried

but not punished for the same conduct under both 18 U.S.C. § 1503 and 18 U.S.C. § 1512).

2. The court reserved the option to file a written opinion on the issue at a later date.

(Ex. L–8; Ex. L–5 at 10–12.) The letters also contained passages which appeared to script the testimony that Goodman should use at trial. (Ex. L–5 at 10–11; Ex. L–11 at 4, 6, 8.)

## II. Legal Standards

United States Sentencing Guideline § 3B1.1 provides for enhancement of a defendant's offense level based upon his role in the offense. A defendant's offense level is to be increased by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). If the defendant was an organizer, leader, manager, or supervisor of a criminal activity which involved fewer than five participants, and was not otherwise extensive, a two-level increase is appropriate. U.S.S.G. § 3B1.1(c). For the purposes of this section, a "participant" is a person who is criminally responsible for the commission of the offense, regardless of whether actually convicted of the offense. U.S.S.G. § 3B1.1 app. note 1.

In determining whether a criminal activity is "otherwise extensive," a court may consider "all persons involved during the commission of the entire offense." U.S.S.G. § 3B1.1 app. note 3. "Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." *Id.*

## III. Analysis

Although defendant's scheme to present perjured testimony to the court and ob-struct justice involved fewer than five participants who could be held criminally liable for the commission of the offense, defendant's criminal activity "used the unknowing services of many outsiders" and was extensive for purposes of § 3B1.1, thereby warranting a four-level enhancement. In deciding this issue, the court found analogous the decision in *United States v. Ellis*, 951 F.2d 580 (4th Cir.1991) (Powell, J.).

*Ellis* involved a scheme to corruptly secure the passage of a bill through the West Virginia legislature. *Id.* at 582. In determining that the criminal activity was extensive, the court observed that while the scheme had only four major participants, the unknowing services of various lobbyists, legislators, and their staffs were used in advancing defendant's criminal activity. *Id.* at 585. *Ellis* concluded that the involvement of these individuals rendered the criminal activity "otherwise extensive." *Id.*

Here, defendant's criminal activity involved at least two participants: defendant himself, and Yolanda Goodman. Both of these individuals can be and have been held criminally responsible for this offense.[3] In addition to these participants, however, many other individuals who are not criminally responsible for the offense unwittingly assisted in its execution. Specifically, defendant's plot to obstruct justice used the unknowing services of attorney James Melton, Melton's staff, and, most importantly, the twelve jurors who returned verdicts based upon the perjured testimony presented at the 2000 trial.[4]

---

3. On May 9, 2001, Yolanda Goodman pled guilty to a criminal information charging her with obstruction of justice, in violation of 18 U.S.C. § 1503. Goodman was sentenced on this offense on August 21, 2001.

4. Defendant also had repeatedly urged Goodman to locate Lanetta Riddick ("Riddick"), an acquaintance who might be persuaded to testify that she had placed the loaded pistol in defendant's van. Instead of contacting Riddick, however, Goodman approached two individuals, "Tony" and "Rasheed," for assistance in finding someone without a felony conviction willing to claim the gun. When

The court finds that the role of attorney James Melton and his staff in assisting in the commission of this offense is indistinguishable from that of the lobbyists and their staffs in *Ellis*. Just as the lobbyists in *Ellis* sought to persuade West Virginia legislators to pass a particular bill without knowing of the underlying illicit circumstances, Attorney Melton presented and argued perjured testimony to the jury without knowledge of its falsity or of defendant's scheme to obstruct justice.

Similarly, both the jury at defendant's 2000 trial and the legislators in *Ellis* acted in the final step of effecting the respective criminal participants' frauds. For either criminal scheme to succeed, an ultimate decision-maker had to ratify the illicit undertaking. The jury's role at defendant's 2000 trial is identical to the legislators' roles in *Ellis,* and both are appropriately considered in determining if a criminal activity was "extensive" for purposes of § 3B1.1. As this court observed at defendant's sentencing, the frauds perpetrated by defendant attack the very core of our judicial system, just as the frauds perpetrated in *Ellis* went to the very core of our legislative system.

### IV. Conclusion

As the evidence adduced at trial and included in the presentence report clearly demonstrates by a preponderance that defendant's role in the offense was that of an organizer or leader, a four-level enhancement to defendant's offense level pursuant to § 3B1.1(a) is warranted because the criminal activity was "extensive" within the meaning of that section.

For the reasons set forth above and from the bench at sentencing, the government's objection to paragraph 44 of the presentence report is **SUSTAINED** and these avenues proved fruitless, Goodman ulti-

the defendant's objection to paragraph 44 is **OVERRULED**.

**IT IS SO ORDERED.**

mately offered to claim the gun herself.