**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.                                          No. 04-4320

DONALD RAY GOODINE,
      *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., District Judge.
(CR-03-472)

Argued: December 3, 2004

Decided: March 15, 2005

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

Affirmed and remanded by published opinion. Judge King wrote the opinion, in which Judge Luttig joined. Judge Traxler wrote a separate opinion concurring in part and concurring in the judgment.

## COUNSEL

**ARGUED:** Eugene E. Lester, III, SHARPLESS & STAVOLA, P.A., Greensboro, North Carolina, for Appellant. Robert Albert Jamison Lang, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Anna Mills Wagoner, United States Attorney, Greensboro, North Carolina.

**OPINION**

KING, Circuit Judge:

Donald Ray Goodine was tried in April 2004 in Greensboro, North Carolina, on a two-count federal indictment, resulting in a hung jury on one charge and an acquittal on the other. Goodine has appealed the district court's post-trial ruling that he could be retried on the charge on which the jury hung (and on which a mistrial was declared) without contravening the Double Jeopardy Clause of the Constitution. As explained below, we conclude that the indictment against Goodine was not multiplicitous, and that there is no constitutional impediment to his second trial. We therefore affirm and remand.

I.

Goodine was indicted by the grand jury in the Middle District of North Carolina on December 16, 2003, for two offenses. First, he was charged with being a felon in possession of a firearm, a .32 caliber pistol, in contravention of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (the "Gun Count").[1] Second, he was charged with being a felon in possession of ammunition, a single .32 caliber bullet, in violation of those same statutory provisions (the "Bullet Count").[2]

Goodine was tried on April 12 and 13, 2004. The prosecution presented hotly contested evidence that, just before midnight on August

---

[1] Section 922(g)(1) of Title 18 renders it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition which has been shipped or transported in interstate . . . commerce." Section 924(a)(2) is the penalty provision for § 922(g), and provides that whoever knowingly violates § 922(g)(1) shall be fined or imprisoned, or both.

[2] More specifically, Count One of the indictment charged that Goodine "knowingly did possess in commerce and affecting commerce a firearm, that is, a Davis Industries .32 caliber pistol, model D-32, serial number 337193." Count Two alleged that Goodine "knowingly did possess in commerce and affecting commerce ammunition, that is, WW S&W .32 caliber ammunition."

11, 2003, Goodine and his girlfriend, Tammy Miller, became involved in an argument, which escalated into a violent confrontation, in his second-floor apartment in a rooming house in Winston-Salem. Prosecution witness Wanda Brown, another rooming house resident who described herself as a friend of Miller,[3] testified that late on August 11, she was drinking beer with Miller in the kitchen Goodine shared with other residents of his apartment ("Apartment C") when, around 11:00 p.m., Goodine returned home and appeared to be angry. Brown then returned to the living room of her own apartment, which was also on the second floor and near Goodine's bedroom.

Julius Petree, describing himself as a resident of Apartment C whose bedroom was next to Goodine's, also testified for the prosecution.[4] According to Petree, he saw Miller and Goodine "throwing stuff, hitting each other," during the argument, which apparently then continued in Goodine's bedroom. Petree testified that, along with his girlfriend and her friend, he went into his own bedroom and closed the door. In Petree's version of events, Goodine then knocked on Petree's bedroom door, telling him to "bring your butt out here," and yelling, "you think you bad" and to stop "getting in my business." When Petree opened the bedroom door, Goodine pointed a pistol in his face. Petree slammed the door, and he and the two women then laid down on the floor, fearful that Goodine might shoot through the door. Once Goodine was back inside his own room, Petree heard Mil-

---

[3]From the record, it appears that the rooming house consisted of several apartments, spread out over at least two floors. There were two apartments on Goodine's second floor. Multiple persons resided in each apartment, which had locked private bedrooms and shared common areas, including a bathroom and kitchen.

[4]Goodine testified that he had never seen Petree before the trial, and denied that Petree lived next to him in the rooming house. Goodine said that he worked two jobs, rarely saw his neighbors, and knew only that "two girls" lived in the room next door, and a man named Richard Burns also shared the apartment. Petree testified that he was Goodine's neighbor, and that he was in the rooming house with his girlfriend and her friend at the time of the shooting. Petree, with the help of Brown, who assisted in the rooming house operations, procured papers purporting to establish him as a resident of the rooming house on the date in question. Those papers were presented as evidence during Petree's re-direct examination.

ler shouting: "Point the gun at me . . . . Shoot me with it if you want to shoot somebody." A few minutes later, Petree heard a gunshot.

Brown also heard the arguing and the gunshot, and called the police. She testified that after she heard the gunshot, she saw Goodine leave the rooming house with a pistol and go downstairs and outside. Brown, who was already outside the rooming house, then witnessed Goodine "bend over as if he was going to place the gun in a [nearby] station wagon." Instead, however, Goodine stopped and returned upstairs with the pistol in his hand — according to Brown, possibly because he knew she was watching. Brown appears to have followed him upstairs, where, watching through a glass storm door, she saw him place the firearm in a trash can.

The first Winston-Salem police officer to arrive on the scene of the events, Officer Mendez, saw Petree (who was apparently downstairs) at the back stairs of the rooming house. Mendez questioned Petree about the gunshot incident, and Petree gave him permission to enter the rooming house. Mendez then went upstairs with Officer Miller, who had just arrived. Mendez testified that, once upstairs, he saw Goodine at the kitchen sink washing his hands. He frisked Goodine for weapons, found none, and gained consent to search the area. Officer Miller then discovered a Davis Industries .32 caliber pistol, containing one fired ammunition casing, in the trash can next to the kitchen sink where Goodine had been standing.

Winston-Salem Police Officer Oliver then arrived on the scene, and he placed Goodine under arrest. By all accounts, Goodine was cooperative with the officers while Miller, his girlfriend, was uncooperative. Oliver then searched Goodine twice, first at the rooming house when he was arrested, and later at the Forsyth County Detention Center ("the Jail") after transporting him there. The Jail search uncovered an unfired .32 caliber bullet, which "was no thicker than perhaps a wad of chewing gum," in the change pocket of Goodine's blue jean shorts.

At trial, Goodine testified extensively in his own defense. He insisted that the prosecution's evidence was entirely false — that he had attempted to end his relationship with Miller, and that, knowing he could not lawfully possess a firearm, she and her friends had retali-

ated by fabricating the entire incident underlying his prosecution. He denied possessing or shooting the pistol, maintained that there had been no argument with Miller and no gunshot, stated that he had no knowledge of the bullet found in his pants pocket, and asserted that Miller had herself laid them out for him to wear. He portrayed his relationship with Miller as on-again, off-again, and he asserted that their recurring breakups were caused by her relapses into drug abuse. He contended that Miller had a history of reacting violently to romantic breakups. Specifically, he testified that after his previous attempts to end their relationship, she had stabbed him in 2000 and hit him with a glass ashtray in 2001. He then introduced medical records to support these allegations, which were not disputed by the prosecution.[5]

On April 13, 2004, the court submitted the case to the jury. After several hours of deliberations, the jury advised the court that it was unable to reach a verdict on one charge, but that it had agreed to a verdict on the other charge. The prosecution moved for a mistrial, to which Goodine objected. The defense then requested the court to instead accept a partial jury verdict, and the prosecution agreed. The district court acceded to the defense request, and the jury soon returned into court with an acquittal of Goodine on the Bullet Count. The court eventually declared a mistrial on the Gun Count, because the jury was yet unable to agree to a verdict on that charge. In the courtroom proceedings surrounding these events, the court observed that, if the prosecution sought to retry Goodine on the Gun Count, the case presented a difficult double jeopardy issue. It directed the prosecutor to advise the court within a reasonable time whether a second trial would be pursued. The court then remanded Goodine to custody pending further proceedings.

On April 19, 2004, Goodine moved to dismiss the Gun Count on double jeopardy grounds, and the prosecution objected. The district court denied Goodine's motion on April 23, 2004, and scheduled the Gun Count for retrial. On April 30, 2004, Goodine filed a Notice of Interlocutory Appeal in the district court. On May 7, 2004, the court

---

[5]Miller was subpoenaed by the government but did not appear for trial at the scheduled time. The court reserved additional time for her testimony the following morning, but Miller again failed to appear, and the court decided that the trial would proceed without her testimony.

conducted a status conference and orally opined that an appeal by Goodine on the double jeopardy issue was neither frivolous nor interlocutory.

## II.

We possess jurisdiction over Goodine's appeal under the "collateral order doctrine." He contends that the district court's refusal to dismiss the Gun Count contravened his rights under the Double Jeopardy Clause of the Fifth Amendment. That ruling constitutes a "final decision" under 28 U.S.C. § 1291, rather than an interlocutory order, and it falls squarely within the "collateral order" exception to the finality rule enunciated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949). *See Abney v. United States*, 431 U.S. 651, 662 (1977) (holding that denial of motion to dismiss on double jeopardy grounds is final order under § 1291); *United States v. Ruhbayan*, 325 F.3d 197, 201 & n.2 (4th Cir. 2003) (same). We review de novo whether a defendant will be subjected to double jeopardy by his retrial on a criminal charge. *United States v. Holbrook*, 368 F.3d 415, 424 (4th Cir. 2004).

## III.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. As we observed in *United States v. Ragins*, there are two components to this constitutional guarantee: "[t]he first provides protections against the imposition of cumulative *punishments* for the same offense in a single criminal trial; the second against being subjected to successive *prosecutions* for the same offense, without regard to the actual imposition of punishment." 840 F.2d 1184, 1187 (4th Cir. 1988) (internal quotation marks omitted). Importantly, it is well-settled that the Double Jeopardy Clause does not preclude a retrial of a criminal charge that has resulted in a hung jury. *Richardson v. United States*, 468 U.S. 317, 323 (1984). As a result, the hung jury on the Gun Count against Goodine does not, in and of itself, bar his retrial on that charge.

Goodine maintains, however, that his acquittal by the jury on the Bullet Count bars his retrial on the Gun Count. He contends, relying

on our decision in *United States v. Dunford*, 148 F.3d 385 (4th Cir. 1998), that the indictment against him was multiplicitous,[6] that the Bullet Count and the Gun Count were in reality the same "offense," and that his acquittal on either charge would serve necessarily as his acquittal on both. In the alternative, he contends that his acquittal on the Bullet Count resolved in his favor a critical factual issue underlying the Gun Count, such that the doctrine of criminal collateral estoppel precludes his retrial on that charge. We assess these alternative contentions in turn.

## A.

Goodine first contends that, in these circumstances, illegal firearm possession and illegal ammunition possession were actually two factual predicates for a single criminal offense, which the indictment defectively split into two charges. He therefore asserts that his retrial on the Gun Count would place him twice in jeopardy for the same offense, in violation of the Double Jeopardy Clause of the Fifth Amendment. His starting assumption is that the indictment against him is "multiplicitous," meaning that a single offense was charged in multiple — here, two — counts. *See United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993) (describing multiplicitous indictment). As we have observed, the "signal danger" of a multiplicitous indictment is that a defendant might thereby receive multiple punishments for the same crime. *Id.*; *see also United States v. Colton*, 231 F.3d 890, 910 (4th Cir. 2000).[7]

---

[6]Various courts, including this one, have spelled multiplicity in its adjective form as "multiplicious" and "multiplicitous." "Multiplicitous" is apparently the preferred spelling of the term, and "multiplicious" may be considered obsolete. Bryan A. Garner, *A Modern Dictionary of Legal Usage* 576-77 (2d ed. 1995).

[7]When we have had occasion to address multiplicitous indictment issues in other contexts, they have invariably related to scenarios where the defendant has been convicted of one or more counts that are actually a single offense charged multiple times. *See, e.g.*, *United States v. Shorter*, 328 F.3d 167, 173 (4th Cir. 2003) (addressing multiple firearm possession convictions); *United States v. Bennafield*, 287 F.3d 320, 323-24 (4th Cir. 2002) (addressing multiple controlled substance convictions); *Colton*, 231 F.3d at 910 (addressing "integrally related" fraud

In assessing whether Goodine's retrial is barred by the prohibition against double jeopardy, we must first decide whether the indictment against Goodine was indeed multiplicitous — in other words, whether the Gun Count and the Bullet Count each charged the "same offense." Inquiries concerning whether two charges are actually the "same offense" normally involve the inverse of the situation here — that is, they involve an indictment which has charged multiple *statutory offenses* premised on the same conduct, and require us to look to whether each charged offense requires proof of some fact that the other does not require. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932). In such a situation, the Supreme Court has held that a defendant may be prosecuted a second time for a different statutory offense even if that offense involves proof of the "same conduct" presented in the first trial; though, if the defendant was acquitted in the first trial, collateral estoppel may apply against the government. *See United States v. Dixon*, 509 U.S. 688, 711-12 (1993). Similarly, the Court has "consistently rejected" the notion that all crimes arising out of the "same transaction" must be prosecuted in a single proceeding. *Id.* at 709 n.14; *United States v. Williams*, 155 F.3d 418, 420-21 (4th Cir. 1988).

In contrast, the situation here — whether Goodine can be reprosecuted for the same statutory violation based on different (albeit somewhat related) conduct — is simple in the abstract. It is well-settled that a defendant may be charged and prosecuted for the same statutory offense multiple times when each prosecution is based on discreet acts that each constitute a crime. For instance, in *Ashe v. Swenson*, 397 U.S. 436 (1970), the Supreme Court addressed the situ-

---

offenses); *Dunford*, 148 F.3d at 390 (addressing multiple firearm possession convictions). In each of these situations, we remedied the multiplicity concerns by directing that the defendant be sentenced on only one of the multiple convictions. *See Shorter*, 328 F.3d at 173 (affirming merger of convictions); *Bennafield*, 287 F.3d at 325 (vacating excess conviction); *Colton*, 231 F.3d at 911 (vacating excess convictions); *Dunford*, 148 F.3d at 390 (vacating excess convictions). The circumstances relating to Goodine's case, where the government seeks to retry Goodine after his partial acquittal on what he contends to be a multiplicitous indictment, present a different issue.

ation of a defendant who had robbed multiple victims in a single incident. After a jury returned an acquittal on a charge as to one victim, the prosecution sought to retry the defendant for the same crime, but as committed against another victim of the same robbery. *Id.* at 439-40. The Supreme Court treated the acts against different victims as separate crimes, but held that the doctrine of collateral estoppel applied to the second prosecution. *Id.* at 444-46 (determining that first jury had necessarily decided that defendant was not culprit). *See also United States v. Walsh*, 194 F.3d 37, 46 (2d Cir. 1999) (determining that indictment alleging same criminal offense based on two different instances of same act, occurring in "different, but overlapping time frames" was not multiplicitous); *United States v. Swaim*, 757 F.2d 1530, 1536-37 (5th Cir. 1985) (concluding that counts of indictment charging violation of same statute based on "different evidence" were not multiplicitous).

The difficulty here, however, comes from the application of our ruling in *Dunford* to this case. In *Dunford*, we concluded that the defendant's simultaneous possession of six firearms and ammunition was in actuality a single "offense," and thus could result in only one § 922(g) conviction and sentence. 148 F.3d at 390. Because Dunford had been indicted, convicted, and sentenced separately for possession of each of the six firearms, plus the ammunition, as seven separate § 922(g)(1) violations, we vacated his several sentences and remanded for the imposition of a single sentence. *Id.* According to Goodine, *Dunford* requires that the Gun Count and the Bullet Count be deemed a single offense, and it compels the conclusion that the indictment against Goodine is multiplicitous. The prosecution concedes that *Dunford* may apply, but it contends that *Dunford* only bars multiple *convictions* for § 922(g) offenses, not a retrial where an acquittal has eliminated the danger of multiple punishments.

We, however, decline to extend *Dunford* to the facts of this case. The key to the *Dunford* decision was the fact that the multiple firearms involved in that prosecution were "seized at the same time." 148 F.3d at 390. In *Dunford*, we applied our decision in *United States v. Mullins*, 698 F.2d 686 (4th Cir. 1983), and concluded that, under the predecessor statute to § 922(g) (18 U.S.C. § 1202(a)), a defendant's possession of multiple firearms at different times constituted separate offenses, but noted the "general rule" that a felon who "acquires two

or more firearms in one transaction and stores and possesses them together . . . commits only one offense." *Dunford*, 148 F.3d at 390 (quoting *Mullins*, 698 F.2d at 687).

Unlike the situation addressed in *Dunford*, the pistol and the bullet underlying this indictment were seized at different times and in different locations — the gun being seized in Goodine's kitchen trash can, and the bullet being seized later at the Jail.[8] The evidence supporting the two incidents is likewise different. The prosecution sought to prove the Gun Count by direct evidence — two separate witnesses had seen Goodine use and possess the pistol and had heard it fired — while the only evidence supporting his knowing possession of the bullet was circumstantial, and his own testimony maintaining that Miller had placed it in his pocket was uncontradicted. The district court recognized this distinction at trial when the double jeopardy issue arose. It astutely advised the parties that, ordinarily, when the question of double jeopardy is raised, "you've got a situation where the facts are identical," but in Goodine's case, "we both know that the facts are somewhat different, he could be convicted of one or both, or acquitted of one or both," such that "this [case] may be different."

In this situation, critical aspects of the Gun and Bullet Counts are different: a successful § 922(g) prosecution on the Gun Count requires proof that Goodine knowingly possessed the pistol, while his successful prosecution on the Bullet Count would require proof that he knowingly possessed the bullet found in his pants pocket at the Jail (a contention the jury has rejected). In these circumstances, it cannot be said that the two temporally distinct possessions actually constituted the "same offense." As a result, we decline to extend *Dunford* to these circumstances, where the government seeks to retry Goodine on a § 922(g) offense after his acquittal on a factually distinct charge under that same statute. There is thus no double jeopardy problem with a retrial of Goodine on the Gun Count.

---

[8]Though the allegation of Count Two was arguably broader than a reference to the bullet seized at the Jail, *see supra* note 2, the prosecution at trial relied solely on Goodine's alleged possession of that bullet in its effort to prove that Count. The prosecution did *not* — significantly for double jeopardy purposes — rely on unfired ammunition contained in the pistol.

## B.

Goodine's second contention is that the doctrine of criminal collateral estoppel bars his retrial on the Gun Count. First of all, we recognize that, in assessing such a contention, the concept of collateral estoppel is a constitutionally based doctrine falling within the scope of the Double Jeopardy Clause. *See Ashe*, 397 U.S. at 445-46. It precludes an ultimate factual issue that was necessarily decided in a defendant's favor in an earlier criminal proceeding from being relitigated against the same defendant. *Id.* at 443-44. In our decision in *United States v. Fiel*, Judge Ervin carefully identified and explained the relevant factors for a proper analysis of a criminal collateral estoppel claim (the "*Fiel* test"):

> (1) whether the issue in question is identical to the issue adjudicated in a prior proceeding;
>
> (2) whether the issue was actually determined in the prior adjudication;
>
> (3) whether the issue was necessarily decided in that proceeding;
>
> (4) whether the resulting judgment settling the issue was final and valid; and
>
> (5) whether the parties had a full and fair opportunity to litigate the issue in the prior proceeding.

35 F.3d 997, 1006 (4th Cir. 1994).

In order for his retrial on the Gun Count to be barred under the *Fiel* test, each of these factors must have been resolved earlier in Goodine's favor. *United States v. Ruhbayan*, 325 F.3d 197, 202 (4th Cir. 2003). Unfortunately for Goodine, his collateral estoppel claim does not survive our application of *Fiel*. First, under prong one of *Fiel*, the items possessed — ammunition and a firearm — are different, creating non-identical issues in the prior and successive prosecutions. Under prongs two and three, whether Goodine possessed the firearm

was not actually or necessarily determined by the jury in its acquittal on the Bullet Count: the prosecution of the Bullet Count relied on distinctly different evidence from that supporting the Gun Count, and Goodine maintained both that he lacked knowledge of the ammunition and that the ammunition was not proven to have travelled in interstate commerce. In those circumstances, a rational jury could have acquitted Goodine on the Bullet Count by resolving factual issues entirely unrelated to the charge contained in the Gun Count. The retrial of Goodine on the Gun Count is thus not barred by the doctrine of collateral estoppel, and his contention on this point is also rejected.

IV.

Pursuant to the foregoing, the ruling of the district court is affirmed and this case is remanded for such other and further proceedings as may be appropriate.

*AFFIRMED AND REMANDED*

TRAXLER, Circuit Judge, concurring in part and concurring in the judgment:

I fully concur in the result reached by the majority in this case, and I concur in the majority's analysis except with regard to the multiplicity issue addressed in Section III. I write separately to explain how I would approach that issue.

In *United States v. Dunford*, 148 F.3d 385 (4th Cir. 1998), we held that the simultaneous possession of multiple firearms generally amounts to a single § 922(g) offense. *See id.* at 390. However, if there is evidence of what amounts to separate, independent acts of possession—for example, evidence that the guns were obtained in separate transactions—multiple § 922(g) counts may be pursued even if the guns were seized at the same time in the same location.

> The general rule is that when a convicted felon acquires two or more firearms in one transaction and stores and possesses them together, he commits only one offense under

§ 1202(a)(1) [a predecessor of § 922(g)]. If no more appears than that the defendant was in possession of the several firearms at the same place and moment before their seizure, it is impermissible for a fact-finder to speculate that they may have been acquired in separate transactions or separately stored or treated. If it can be shown, however, that the seized weapons were acquired at different times and places, multiple prosecutions and consecutive sentences are permissible notwithstanding seizure at the same time and place.

*United States v. Mullins*, 698 F.2d 686, 687 (4th Cir. 1983) (citations omitted); *see also Dunford*, 148 F.3d at 390.

In my view, the facts of this case are insufficient to bring this case within the separate-possession exception recognized in *Dunford* and *Mullins*. While the bullet in Goodine's pocket was discovered at the jail, that was only because the police missed the bullet when they searched Goodine at the rooming house. Had a proper search been done, the gun and the bullet would have been seized at the same time, in the same place. Under these circumstances, Goodine's possession of the bullet was no more temporally or spatially distinct from his possession of the gun at the rooming house than were the "possessions" at issue in *Dunford*, where the defendant's possession of various groups of guns and ammunition found, among other places, in two separate bedrooms belonging to his children was determined to constitute a single offense. I believe that Goodine's possession of the gun and the bullet thus must be viewed as constituting a single offense under *Dunford*. Accordingly, the indictment charging the single offense in two counts was multiplicitous.

That the indictment was multiplicitous, however, does not in this case carry with it any Double Jeopardy implications. The Double Jeopardy Clause "protects defendants against second prosecutions for the same offense after either an acquittal or a conviction and against multiple punishments for the same offense." *United States v. Bowe*, 309 F.3d 234, 238 (4th Cir. 2002).

Because Goodine has not been convicted of anything, the prohibition against a second prosecution after a conviction is obviously inapplicable. The prohibition against multiple punishments for a single

offense, of course, would be implicated if separate sentences were imposed on each count of a multiplicitous indictment. In such cases, the Double Jeopardy problem would be cured by vacating all convictions save one and imposing a single sentence. *See, e.g.*, *United States v. Leftenant*, 341 F.3d 338, 347-48 (4th Cir. 2003), *cert. denied*, 540 U.S. 1166 (2004); *Dunford*, 148 F.3d at 390. But because no sentence, much less multiple sentences, has been imposed on Goodine, the Double Jeopardy concerns of *Dunford* are not implicated in this case.

Thus, the only Double Jeopardy interest arguably at issue in this case is the protection against successive prosecutions after acquittal. For the protections of the Double Jeopardy Clause to be triggered, however, there must first be "some event, such as an acquittal, which terminates the original jeopardy." *Richardson v. United States*, 468 U.S. 317, 325 (1984). It is beyond dispute that the declaration of a mistrial because of the jury's inability to reach a verdict on the Gun Count did not terminate the original jeopardy. *See id.* at 326. And in my view, the "acquittal" on the Bullet Count likewise did not terminate the original jeopardy.

Although there can be but one § 922(g) offense in this case, that single offense could be established by proof that Goodine knowingly possessed *either* the gun *or* the bullet. If the government, as it should have done, had alleged in a single count that Goodine unlawfully possessed the gun and the bullet, a conviction could have been sustained on either ground. *See United States v. Harvard*, 103 F.3d 412, 420 (5th Cir. 1997) ("Where a statute specifies several alternative ways in which an offense can be committed, the indictment may allege the several ways in the conjunctive, and a conviction thereon will stand if proof of one or more of the means of commission is sufficient." (internal quotation marks omitted)). The jury's rejection of the bullet allegation would not have precluded a re-trial on the allegation that Goodine knowingly possessed the gun. *See United States v. Rivera*, 77 F.3d 1348, 1351-52 (11th Cir. 1996) (per curiam) (where defendant was charged in a single-count indictment with possessing a firearm on two separate dates, jury's determination that defendant did not possess the firearm on one of the dates alleged did not preclude re-trial after jury was unable to reach a verdict as to defendant's possession of the firearm on the second date alleged: "When the jury dead-

locked as to the August 12, 1994, date, and the district court declared a mistrial, jeopardy did not fully terminate. Therefore, the Double Jeopardy Clause does not bar a second prosecution as to the alleged August 12, 1994, possession.").

The government's error in charging the offense in separate counts should not change this analysis. The jury's determination that Goodine did not knowingly possess the bullet did not amount to a complete acquittal of *the offense*, but instead was simply a determination that Goodine did not commit the offense in one of the two possible means. Since there has been no complete acquittal on the § 922(g) charge, jeopardy has not fully terminated. The government, therefore, is not precluded from re-trying Goodine on the Gun Count, because the indictment error has not prejudiced Goodine in any way. Goodine was not and cannot be subjected to multiple sentences, and there is no more of a multiple-prosecution problem in this case than in any case involving re-trial after a hung jury. To prevent the government from re-trying Goodine on the Gun Count because of the government's non-prejudicial indictment error would be to give Goodine relief from a non-existent Double Jeopardy violation.

Although my analysis of this issue differs from that of the majority, the result is the same. Accordingly, I concur in the result reached by the majority in Section III of the opinion, and I fully concur in the remainder of the opinion.