#25271-rev & rem-JKK

**2010 SD 58**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellant,

v.

TRENT DANIELSON,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE RANDALL L. MACY
Judge

\* \* \* \*

JOHN H. FITZGERALD
Lawrence County State's Attorney                    Attorney for plaintiff
Deadwood, South Dakota                    and appellant.

JOHN R. FREDERICKSON
FRANCY E. FORAL of
Frederickson Law Office, P.C.                    Attorneys for defendant
Deadwood, South Dakota                    and appellee.

\* \* \* \*

ARGUED MARCH 23, 2010
REASSIGNED MAY 20, 2010

OPINION FILED **07/14/10**

KONENKAMP, Justice (on reassignment).

[¶1.]     This case requires us to decide whether a defendant, acquitted of grand theft, may be prosecuted for perjury on his trial testimony if the issue in the pending perjury trial was raised in the former trial. In dismissing the perjury charge on double jeopardy grounds, the circuit court reasoned that defendant's truthfulness on whether he fixed a 1950 Studebaker had been litigated as an essential issue in the former case. But the question is whether the jury verdict in the former case necessarily decided the issue to be determined in the perjury trial. Because the jury's acquittal could have been based on grounds other than accepting as true defendant's allegedly false statements about fixing the Studebaker, we reverse and remand.

## Background

[¶2.]     In 2003, Rocket Lube of Spearfish, South Dakota, hired Trent Danielson. He worked there both as a mechanic and auto painter until he was fired in September 2006. Rocket Lube reported to the police that Danielson had stolen auto parts and had failed to remit checks for work done on a customer's vehicle. All the checks were from Dr. Tom Cox for mechanical work Danielson performed.

[¶3.]     Danielson was indicted on one count of grand theft under SDCL 22-30A-1 and SDCL 22-30A-17. An amended bill of particulars listed all the parts and money Danielson allegedly stole.[1] In the jury trial, the State presented evidence

---

1.    The bill of particulars alleged that the following transactions formed the basis of the charge: seven checks written by Dr. Cox that were given to defendant; an invoice for a Jeep oil pan; a throttle body injector system for a 1957 Willys; sensors for a 1949 Chevy; sensors for a 1957 Willys; an invoice

(continued . . .)

that the checks Danielson obtained from Dr. Cox were property of Rocket Lube. Danielson claimed that he and Dr. Cox had a private agreement, outside his employment with Rocket Lube, to perform mechanical work on Dr. Cox's vehicles. Danielson testified that the arrangement with Dr. Cox resulted from a discussion where Dr. Cox told Danielson he felt Rocket Lube was taking advantage of him. According to Danielson, Dr. Cox asked him if he would work on Dr. Cox's vehicles in his spare time to save expenses. Danielson agreed, doing the work on his own time, at his father's house. Dr. Cox also testified. While he agreed that he felt he was being overcharged by Rocket Lube, he claimed that he thought Danielson was acting as an agent for Rocket Lube when performing the work on his vehicles.

[¶4.] The jury found Danielson not guilty of grand theft. Shortly afterwards, Danielson was indicted on one count of perjury. The indictment alleged that during Danielson's grand theft jury trial he testified falsely by saying that "he had replaced parts inside the transmission of Dr. Tom Cox's 1950 Studebaker pick-up truck," when no such work was actually done. Danielson moved to dismiss the indictment as a violation of the prohibition against double jeopardy guaranteed by the South Dakota and United States constitutions. *See* US Const amend V; SD Const art VI, §9. Danielson argued that the State was collaterally estopped from prosecuting him for perjury arising out of his jury trial in which he was acquitted. To

_____

(. . . continued)
for two U-joint repair kits; two invoices for spark plug wires; an invoice for an electronic fuel pump for a 1949 Chevy; an invoice for shocks and struts; two invoices for an Edelbrock carburetor for a 1957 Willys; an invoice for a timing light; and an invoice for silver paint for a 1957 Jeep.

Danielson, the jury's acquittal was a final determination that he had indeed replaced the 1950 Studebaker transmission parts. The circuit court agreed and dismissed the perjury charge.

## Analysis and Decision

[¶5.]	In Danielson's trial for grand theft, the issue before the jury was whether he had taken money or property owed to his employer for work he performed on his employer's behalf. Danielson testified that he had an outside agreement with Dr. Cox to perform mechanic's work. He described his work on Dr. Cox's 1950 Studebaker, even offering photographs to prove that he performed the claimed work. As a means of challenging Danielson's credibility, the State called expert witnesses to show that Danielson had not worked on the 1950 Studebaker. In closing remarks, the prosecutor went so far as to say that the jurors "should find him innocent" if they believed Danielson did the claimed work.

[¶6.]	Relying on the fact that work performed on the 1950 Studebaker was disputed and that counsel for the State underscored this dispute in closing remarks, Danielson maintains that when the jury acquitted him it concluded that he performed the work on the 1950 Studebaker. But the State argues that it was not necessary for the jury to determine whether Danielson did the work in order to acquit him of grand theft.

[¶7.]	The Fifth Amendment of the United States Constitution and Article Six of the South Dakota Constitution forbids placing a person in jeopardy twice for

the same offense. US Const amend V; SD Const art VI §9.[2] In *Ashe v. Swenson*, the United States Supreme Court held that the Fifth Amendment's prohibition against double jeopardy encompasses the doctrine of collateral estoppel. 397 US 436, 443, 90 SCt 1189, 1194, 25 LEd2d 469 (1970). Generally, the doctrine applies when an issue of fact or law was actually litigated and determined by a final and valid judgment, and the determination was essential to the judgment. *Id.* Collateral estoppel in a criminal case applies when an "'issue of ultimate fact has once been determined by a valid and final judgment[.]'" State v. Flittie, 318 NW2d 346, 348 (SD 1982) (quoting *Ashe*, 397 US at 443, 90 SCt at 1194, 25 LEd2d 469). Nonetheless, when "'a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration'" collateral estoppel will not bar subsequent prosecution. *Id.*

[¶8.] In cases like these, "courts have long struggled with the question of when acquittal of a crime will bar the defendant's subsequent prosecution for perjury for testimony given in his own behalf at trial." State v. DeSchepper, 231 NW2d 294, 297 (Minn 1975). "In almost every criminal prosecution resulting in acquittal where the defendant has testified, it may be said that the jury passed on the defendant's credibility and found him truthful." United States v. Nash, 447 F2d 1382, 1387 (4thCir 1971) (Winter, C.J., concurring specially). Yet "an acquittal does

---

2. Because defendant has not asserted and we have not discerned "a basis to distinguish the protections afforded by the South Dakota Constitution from those provided in the federal constitution under the circumstances of this case, our analysis applies equally to both the state and federal constitutional provisions." *See* State v. Deneui, 2009 SD 99, ¶12, 775 NW2d 221, 229 (citation omitted).

not constitute an automatic bar to a subsequent prosecution for perjury committed during the earlier trial." United States v. Ruhbayan, 325 F3d 197, 201-02 (4thCir 2003); United States v. Richard, 892 F2d 761, 763 (9thCir 1989). To conclude otherwise "would encourage prevarication by saying that necessarily such a defendant is immune from prosecution for perjury." *Nash*, 447 F2d at 1387. Therefore, "[u]nless the record of the prior proceeding affirmatively demonstrates that an issue involved in the second trial was definitely determined in the former trial, the possibility that it may have been does not prevent the relitigation of that issue." United States v. Haines, 485 F2d 564, 565 (7thCir 1973).[3]

[¶9.]        We review de novo a circuit court's dismissal of an indictment on double jeopardy grounds. *See* United States v. Petty, 62 F3d 265, 267 (8thCir 1995). The burden is "on defendant to demonstrate that the issue whose relitigation [defendant] seeks to foreclose was actually decided in the first proceeding." Dowling v. United States, 493 US 342, 350, 110 SCt 668, 673, 107 LEd2d 708 (1990). While Danielson's work on the Studebaker was interrelated with the question whether Danielson committed grand theft, a question possibly addressed by the jury, there is no indication that the jury was bound to decide that Danielson performed the work on the Studebaker in order to acquit him.

---

3.      *See also* United States v. Baugus, 761 F2d 506 (8thCir 1985) (perjury prosecution not precluded by collateral estoppel rule in double jeopardy clause); United States v. Gugliaro, 501 F2d 68 (2dCir 1974) (same); Adams v. United States, 287 F2d 701 (5thCir 1961) (same); United States v. Woodward, 482 FSupp 953 (WDPa 1979) (same); State v. Hope, 577 A2d 1000 (Conn 1990) (collateral estoppel barred subsequent prosecution for aiding and abetting); Dixon v. State, 513 So2d 951 (Miss 1987) (subsequent prosecution for kidnapping barred by collateral estoppel).

[¶10.]　　　That a fact *may* have been determined in the former trial is not enough; only an unequivocal showing that the issue sought to be foreclosed by the defendant was definitely and necessarily decided by the jury will suffice to prohibit the prosecution from relitigating that issue in a second trial. United States v. Marino, 200 F3d 6, 10 (1stCir 1999). To convict Danielson of grand theft, the jury had to find beyond a reasonable doubt that he took or exercised control over "property" of Rocket Lube "with intent to deprive [it] of the property[.]" *See* SDCL 22-30A-1. In acquitting Danielson, the jury could have simply found that Danielson had a side agreement with Dr. Cox to perform mechanical work and that consequently Danielson did not deprive Rocket Lube of any checks or property.

[¶11.]　　　Merely because a point was sharply disputed before the jury does not mean the issue was necessarily decided or that it was an ultimate issue of fact. Nor does the State's emphasis on the Studebaker during closing arguments mean perforce that the jury was confined to determine guilt or innocence based on whether it believed that Danielson worked on the Studebaker. Neither the formal charge against Danielson nor the bill of particulars mentioned the 1950 Studebaker.[4] Considering the entire record, including the pleadings, evidence, and instructions, Danielson has failed to satisfy his burden of demonstrating that the

---

4.　　The charge against defendant alleged:

> That on or about the month of January 2005 through September 2006, in the County of Lawrence, State of South Dakota, [Trent Danielson] did take or exercise control over property of another, pursuant to one scheme or course of conduct, namely, property of Rocket Lube, Spearfish, South Dakota, the value of which exceeds $1,000.00, with intent to deprive the owner of said property. Contrary to SDCL 22-30A-1 and 22-30A-17(1).

jury's not guilty verdict necessarily included an implicit factual finding that he performed the work on the 1950 Studebaker. Simply put, the jury could have acquitted him for reasons other than deciding whether he actually did that work. *See* Ashe, 397 US at 444, 90 SCt at 1194, 25 LEd2d 469. Therefore, the circuit court erred in barring the perjury prosecution.

[¶12.] Reversed and remanded.

[¶13.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, concur.

[¶14.] MEIERHENRY, Justice, dissents.


MEIERHENRY, Justice (dissenting).

[¶15.] I would affirm the circuit court because the State made Danielson's claim of repairing Dr. Cox's 1950 Studebaker truck central to its case and necessary for the jury's verdict. The State charged Danielson of converting seven checks belonging to Rocket Lube. The checks were payment for repairs to Dr. Cox's vehicles. Danielson claimed that he was entitled to the checks because of a side agreement with Dr. Cox. The State attacked Danielson's credibility by presenting in its case-in-chief, Jake Jansevic, Rocket Lube's manager, and Rich Parcels, a mechanic, to testify that no work had been done on Dr. Cox's Studebaker as Danielson claimed.

[¶16.] Danielson described his work on the Studebaker's transmission to the jury. He presented photographs of the transmission and clutch discs he claimed to have replaced. Parcels and Jansevic disputed Danielson's claim of repairing the

transmission. Parcels claimed the transmission appeared untouched. He also claimed that Danielson's photos depicted discs that would not have fit the transmission. Parcels concluded Danielson had not worked on the transmission. Danielson explained that the reason the transmission did not appear recently modified or opened was because of the way he accessed it. Danielson further testified that the pictured transmission discs were interchangeable and capable of being installed in the Studebaker's transmission.

[¶17.] The State's theory of the case was that Danielson was getting "blank checks from [Dr. Cox] for work as a Rocket Lube employee" and that "those checks belonged to Rocket Lube." The State argued during closing argument that its witnesses established that "the transmission had no evidence of being opened up" and that the clutch discs from the transmission were old. The State also stated that Danielson's contention that he performed work on the transmission was "not true." Finally, the State told the jurors that if they believed [Danielson's] explanations, "then [the jurors] should find him innocent." This is exactly what the jury did on all counts of theft. Because the State presented the case in this way, Danielson's credibility concerning whether he worked on the transmission was implicit in the verdict.

[¶18.] The United States Supreme Court in *Ashe* set forth the manner of inquiry to guide courts in deciding when collateral estoppel applies in criminal cases. 397 US at 444, 90 SCt at 1194. The rule "is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Id.* If the prior conviction is by a general verdict, a court

is required "to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" *Id.* (citation omitted). A court's "inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.'" *Id.* (citation omitted). *Ashe* rejected technically restrictive tests, especially "where the first judgment was based upon a general verdict of acquittal" because "[a]ny test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." *Id.*

[¶19.]     In *Flittie*, this Court applied the dictates of *Ashe,* and stated that a reviewing court's main inquiry is "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." 318 NW2d at 348 (quoting *Ashe*, 397 US at 444, 90 SCt at 1194). The inquiry is a practical analysis of all the circumstances of the prior proceedings, including "the pleadings, evidence, charge, and other relevant matter[s]." Consequently, whether collateral estoppel bars a subsequent perjury prosecution based on testimony from a prior case depends on the unique facts and proceedings of the case.

[¶20.]     The Fourth Circuit Court of Appeals found double jeopardy applied in a case with similar facts. United States v. Nash, 447 F2d 1382 (4thCir 1971). Nash was tried for postal theft of "marked" coins from an envelope. *Id.* at 1383. Nash

testified in her defense that she received the coins from a change machine. She was acquitted. The government then brought a perjury charge based on her testimony that she got the coins from the change machine. *Id.* at 1384. The government conceded that Nash's testimony was "highly material," but argued that "procurement or possession of the coins was not an element of the mail offense." *Id.* at 1384. At trial, the government presented evidence that the change machine could not recycle marked coins. The jury found Nash guilty of perjury. On review, the Fourth Circuit reversed the verdict on the basis of collateral estoppel. Relying on the prescriptions set forth in *Ashe*, the court determined that "the jury in the first case undoubtedly passed upon the believability of [] Nash's statements made under oath." *Id.* at 1385.

> Of course, the Government did not have to prove that she had not obtained the coins as she explained, but it did have the burden of establishing that she had taken the letter containing the coins from the mail. The change machine explanation was part of her defense and had to be weighed by the jury. Consequently, it cannot have been simply a collateral issue. While she was under no obligation to prove that the coins had not come from the mail box, still when her story was adduced, it created a conflict with the Government's proof. There were but two conflicting explanations of her possession to be considered. Thus, the jury 'necessarily' had to pass upon the truthfulness of her account. The issue was 'crucial' and once adjudicated, its redetermination in a trial for another offense is estopped.

*Id.*

[¶21.] A comparable analysis applies here. The State did not have to prove that Danielson failed to perform work on the transmission, but it did have to prove that the checks and parts Danielson received belonged to Rocket Lube. The side agreement with Dr. Cox was part of Danielson's defense that he was in lawful

possession of the checks. The jury had to weigh the truthfulness of his defense. Consequently, the side agreement and whether he worked on the transmission were not simply collateral issues. The jury had before it two conflicting explanations. The jury "necessarily" had to pass upon the truthfulness of Danielson's explanation. *Id.* Therefore, Danielson's credibility concerning whether he performed the work for Dr. Cox was "crucial," and the State should be collaterally estopped from retrying that same issue in a subsequent perjury trial. *Id.*

[¶22.] The circuit court correctly ruled in this case. The circuit court looked at this in "a practical frame" with "an eye to all the circumstances of the proceedings." *Ashe*, 397 US at 444, 90 SCt at 1194. The question on appeal is whether a rational jury could have decided this case without deciding whether Danielson was telling the truth about working on the transmission. I would answer this question in the negative because of the way the State tried the case. The prosecutor told the jurors to base their decision on how they judged Danielson's credibility. The majority concludes that the jury could have disbelieved Danielson and still found him not guilty of theft. This conclusion ignores the State's presentation of evidence and argument to the jury. The challenge to Danielson's credibility hinged on whether he was telling the truth about working on the transmission. It is difficult to imagine how a rational jury would have returned a not guilty verdict without finding Danielson credible. Consequently, I would affirm the circuit court's dismissal of the State's perjury indictment.